**Anthony LAFAUCI, Plaintiff,**

v.

**Michael CUNNINGHAM, William, Coalter, Angelo Kannbatsis, John Novak, James B. Bailey, Paul Curran, Joel Robinson, Jay Hislop, and John Doe, Defendants.**

No. Civ.A. 98–12328–JLT.

United States District Court,
D. Massachusetts.

April 4, 2001.

Anthony Lafauci, Cheshire, CT, for Plaintiff.

Mary E. Schwarzer, Attorney General Office, Concord, NH, Beatriz E. Van Meek, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

Pro Se Plaintiff Anthony Lafauci brings this 42 U.S.C. § 1983 (2000) action against the following prison officials: Michael Cunningham, Angelo Kannbatis, John Novak, James Bailey, Paul Curran, Joel Robinson, Jay Hislop, and John Doe. Lafauci alleges that Defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights by using excessive force against him and denying him proper medical care. Lafauci's Motion to Correct Filing Fees now is before this court. For the reasons stated below, his Motion is ALLOWED.

## BACKGROUND

Lafauci applied to this court and was granted permission to proceed *in forma pauperis*. Indigent prisoners, unlike other indigent litigants, must pay filing fees in installments based upon a statutory formula. *See* 28 U.S.C. § 1915(b) (2000). The statute provides that an indigent prisoner be assessed 20% of his/her preceding month's income, so long as his/her prisoner account balance exceeds $10.00. *See id.* at § 1915(b)(2).

Lafauci filed four cases after being incarcerated, all of which required payment of a filing fee. He initially was incarcerated at the Massachusetts Correctional Institute ("MCI") Cedar Junction in Walpole, Massachusetts. MCI Cedar Junction interpreted the 20% statutory assessment as a maximum monthly assessment for all filing fees, regardless of the number of lawsuits filed. MCI Cedar Junction accordingly assessed Lafauci a total of 20% of his monthly income to pay his four filing fees.

Lafauci later was transferred to Souza Baranowski Correctional Center ("Souza Baranowski") in Shirley, Massachusetts. Souza Baranowski interpreted the statute differently, determining that a 20% assessment of the prisoner's monthly income was required for each filing fee owed. The prison then assessed Lafauci 80% of his monthly income, 20% for each of his four filing fees.

Lafauci argues that any assessment more than 20% of his monthly income violates § 1915(b)(2). He claims that Souza Baranowski's improper assessments of his inmate account resulted in his account being frozen, leaving him little or no money to buy personal hygiene items and causing the prison to refuse to mail his legal papers to the court because he lacked funds for postage.

## DISCUSSION

Lafauci moves this court to correct his filing fees. Lafauci's Motion presents the court squarely with an issue that has troubled many prison officials: whether an indigent prisoner's multiple filing fees should be collected simultaneously or sequentially. The question is one of first impression in this Circuit.

In an effort to stem the number of frivolous inmate lawsuits, Congress amended 28 U.S.C. § 1915(b) to require inmates to pay filing fees in their civil actions and appeals. *See* Prison Litigation Reform Act of 1996, Title VII of the Omnibus Consolidated Recessions and Appropriations Act of 1996, Pub.L. No. 104–134, § 804, 110 Stat. 1321, 1321–73 (1996); 141 Cong. Rec. S7,526 (daily ed. May 25, 1995) (statement of Sen. Kyl) ("[T]he provision will deter frivolous inmate lawsuits."). Congress provided that:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of

the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* at § 1915(b)(2).

Souza Baranowski interpreted § 1915(b)(2) to require that filing fees be collected simultaneously. Simultaneous collection means that each fee is treated separately, so an inmate with multiple filing fees would be assessed 20% of his/her monthly income for each fee incurred. An inmate filing four cases or appeals, for example, would be assessed 80% of his/her monthly income.

MCI Cedar Junction interpreted § 1915(b)(2) to require that filing fees be collected sequentially, meaning an indigent prisoner could be assessed no more than 20% of his/her monthly income, regardless of the number of lawsuits filed. Each filing fee then is satisfied in the order incurred.

This court is not the first to address the sequential or simultaneous collection of filing fees under 28 U.S.C. § 1915(b)(2). The Seventh and Second Circuits specifically considered the issue, but reached different conclusions.[1]

In *Newlin v. Helman,* the Seventh Circuit held that the filing fees for multiple civil actions or appeals should be collected simultaneously. *See* 123 F.3d 429, 436 (7th Cir.1997), *overruled on other grounds, Lee v. Clinton,* 209 F.3d 1025 (7th Cir.2000); *Walker v. O'Brien,* 216 F.3d 626 (7th Cir. 2000). The Seventh Circuit reasoned that

under a sequential collection scheme, the statute's objective of decreasing the number of frivolous inmate lawsuits would be frustrated because inmates would avoid the immediate "cost[s] for each legal activity." *Newlin,* 123 F.3d at 436. The court noted, moreover, that if filing fees were not collected simultaneously, "a prisoner could file multiple suits for the price of one." *Id.*

The Second Circuit recently weighed in on the issue. *See Whitfield v. Scully,* 241 F.3d 264 (2d Cir.2001). Rejecting *Newlin*'s interpretation, the Second Circuit held that multiple filing fees should be recouped sequentially, at a constant rate of 20% of monthly receipts to the prisoner's account. *See id.* at 277. The court pondered a situation where a prisoner incurred five or more filing fees under a simultaneous collection scheme, thus requiring assessment of 100% of the prisoner's monthly income. Without concluding that the assessment would be unconstitutional, the Second Circuit noted that a mandatory recoupment of 100% of a prisoner's monthly income could raise serious constitutional questions. *See id.* Mindful of the Supreme Court's mandate to "avoid an interpretation of a federal statute that engenders constitutional issues if reasonable alternative interpretation poses no constitutional question," *Gomez v. United States,* 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Second Circuit held that § 1915(b)(2) "requires a recoupment of multiple encumbrances in sequential fashion . . . . ." *Whitfield,* 241 F.3d at 277.

---

**1.** The D.C. Circuit did not specifically address this issue, but speculated how § 1915(b) should be interpreted. The court stated that the statute's specification of a single 20% payment rate suggested that Congress intended the rate to serve as a uniform ceiling. It further noted that sequential assessment was

a compromise between the imperative to collect fees and costs and the right of prisoners to effective access to the courts. *See Tucker v. Branker,* 142 F.3d 1294, 1298 (D.C.Cir.1998) ("In sum, the payment requirement of [§ 1915] never exacts more than 20% of an indigent prisoner's assets or income.").

This court finds the Second Circuit's reasoning in *Whitfield* persuasive. Although Congress sought to decrease the number of meritless inmate lawsuits in federal courts, it did not intend to prohibit a prisoner from bringing a lawsuit solely because the prisoner lacks the funds to do so. *See* § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

 Furthermore, indigent prisoners have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This right guarantees prisoners a reasonably adequate opportunity to present to the court any claims of fundamental constitutional rights violations. *See Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). Were filing fees collected simultaneously, an inmate owing five or more fees would have no income for postage, copying, paper, envelopes, writing utensils, etc.—potentially leaving him/her without means of court communication. Such an assessment arguably would deny the prisoner his/her right to access to the courts. This court, therefore, agrees that the simultaneous collection of filing fees from indigent prisoners may raise serious constitutional concerns.[2]

For these reasons, this court adopts the Second Circuit's reasoning in *Whitfield* and concludes that § 1915(b)(2)

requires that filing fees be collected from indigent prisoners sequentially, rather than simultaneously.

### CONCLUSION

Because Souza Baranowski erred by simultaneously collecting Lafauci's filing fees, Lafauci's Motion to Correct Filing Fees is ALLOWED; and any fees assessed from his prisoner account in excess of 20% of his monthly receipts must be remitted.

An Order issued on March 29, 2001.

---

**2.** The court notes that nine circuits have specifically addressed the related issue of whether requiring prisoners to pay filing fees violates a prisoner's access to the courts, each holding that requiring prisoners to pay a filing fee does not deny a prisoner effective access to the courts. *See Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir.1999); *Tucker v. Branker*, 142 F.3d 1294, 1297 (D.C.Cir.1998); *Murray v. Dosal*, 150 F.3d 814, 819 (8th Cir. 1998); *Lucien v. DeTella*, 141 F.3d 773 (7th Cir.1998); *Shabazz v. Parsons*, 127 F.3d 1246, 1248–49 (10th Cir.1997); *Norton v. Dimazana*, 122 F.3d 286, 289–91 (5th Cir.1997); *Nicholas v. Tucker*, 114 F.3d 17, 21 (2d Cir. 1997); *Roller v. Gunn*, 107 F.3d 227, 231–33 (4th Cir.1997); *Hampton v. Hobbs*, 106 F.3d 1281, 1284–86 (6th Cir.1997).